**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bankers Life and Casualty Company,<br><br>  Plaintiff,<br><br>v.<br><br>Stephen Polich,<br><br>  Defendant. | No. CV-23-01775-PHX-DWL<br><br>**ORDER** |

On August 24, 2023, Plaintiff filed the verified complaint for injunctive relief. (Doc. 1.) The complaint alleges that Plaintiff Bankers Life and Casualty Company ("Plaintiff" or "Bankers Life") and Defendant Stephan Polich ("Defendant" or "Polich") had a contract that "authorized Polich to sell and solicit Bankers Life products"—a contract that Polich terminated to join certain "direct competitors of Bankers Life." (*Id.* ¶¶ 1-2.) Before leaving Bankers Life, Polich allegedly obtained Bankers Life's confidential information and has since used it "to improperly solicit policyholders to cancel their Bankers Life policies." (*Id.* ¶ 2.) "Bankers Life has a contractual agreement with Polich to arbitrate disputes," but this agreement "provides an exception for requests for emergency injunctive relief." (*Id.* ¶ 3.) Thus, "this action is limited to Bankers Life's request for emergency injunctive relief and the attorneys' fees and costs in obtaining" such relief, and Bankers Life "intends to pursue an arbitration claim against Polich for damages caused by the actions discussed above and other actionable conduct." (*Id.* ¶ 4.)

That same day, Plaintiff filed a motion for a temporary restraining order ("TRO")

1  and preliminary injunction ("PI") (Doc. 3) and a motion for expedited discovery (Doc. 4).

2  On August 25, 2023, the Court ordered expedited service, set an expedited response
3  deadline for the TRO and expedited discovery motions, and set a hearing on the motions
4  for September 6, 2023.  (Doc. 9.)  Service was executed (Doc. 10) and a response filed
5  (Doc. 11).

6  On September 6, 2023, the Court held a hearing and determined that Plaintiff had
7  failed to establish the necessary clear entitlement to relief required to provide the basis for
8  granting a TRO or to demonstrate that Plaintiff would suffer irreparable harm in the
9  absence of a TRO, and therefore the TRO request was denied.  (Doc. 13.)  In light of
10 Defendant's non-objection to expedited discovery, the Court granted Plaintiff's motion for
11 expedited discovery (Doc. 14) and held off on setting a hearing date for the PI request,
12 noting that a hearing could be set later if needed, based on the results of the expedited
13 discovery, after the parties met and conferred.  (Doc. 13.)

14 On October 20, 2023, the Court set a status conference for October 30, 2023.  (Doc.
15 17.)

16 On October 30, 2023, the Court held a status conference at which the parties stated
17 they had been working through proposed ESI search terms for a cell phone and working
18 through scheduling a deposition date and asserted that those two issues would dictate the
19 necessity of a PI hearing.  The parties expressed a preference for continuing to work
20 through things informally over setting a hearing. (Doc. 18.)  The Court agreed to allow
21 this and asked the parties to either request a hearing or inform the Court that a hearing
22 would not be necessary (so the case would not linger on the docket).  The Court expressed
23 a hope that "one way or another," this would be done "pretty soon."

24 On December 5, 2023, the Court, having heard nothing from the parties for weeks,
25 ordered the parties to file a joint status report by December 12, 2023.  That deadline elapsed
26 unheeded.

27 On December 22, 2023, the parties belatedly filed a status report that stated they had
28 "nearly reached agreement on search terms to be used during the forensic examination of

Defendant's cellular telephone" and anticipated "initiating the examination within the next ten (10) business days" despite having "not yet secured a vendor to complete the forensic examination." (Doc. 20.)  The parties did not explain or even acknowledge the 10-day delay in filing their status report.

On January 5, 2023, the Court—after determining that ten business days from December 22, 2023 would be January 10, 2024—ordered the parties to file a joint status report on January 10, 2024, specifying that the report "should indicate a plan for how the pending preliminary injunction motion can be resolved as soon as possible and at the latest within the next 60 days." (Doc. 21.)  The Court cautioned that "[f]ailure to timely file this status report may result in sanctions including dismissal of this action for failure to prosecute." (*Id.*)

Despite the Court's warning, this deadline too went unheeded.  To date, no status report responsive to the Court's January 5, 2024 order has been filed.

"It is within the inherent power of the court to sua sponte dismiss a case for lack of prosecution." *Ash v. Cvetkov*, 739 F.2d 493, 496 (9th Cir. 1984).  The Court considers five factors when determining whether to dismiss a case for failure to prosecute or for failure to comply with court orders, "including: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic alternatives." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992); *Ash*, 739 F.2d at 496.

The Court finds that no less drastic alternative to dismissal is appropriate here.  The public's interest in expeditious resolution of litigation and the Court's need to manage its docket outweigh the public policy favoring disposition of cases on their merits, under these circumstances.  The arbitration agreement between the parties means—as acknowledged by Plaintiff (Doc. 1 ¶ 4)—that the merits of the parties' dispute must be decided in arbitration.  The exception that allowed Plaintiff to file this action is for "emergency injunctive relief." (*Id.* ¶ 3.)  This case has been plodding along for over four months,

despite the Court's efforts to prod the parties into moving toward a resolution, and Plaintiff has demonstrated its lack of urgency by repeatedly missing deadlines and delaying in proceeding to a PI hearing. Plaintiff does not appear to view its request for injunctive relief as an "emergency" requiring immediate action, and the Court agrees that the relief sought does not constitute an emergency. Plaintiff can renew its request for injunctive relief if and when the parties proceed to arbitration. Moreover, the Court warned Plaintiff that this outcome would follow a second failure to timely follow the Court's orders, and Plaintiff disregarded that warning.

Accordingly,

**IT IS ORDERED** that Plaintiff's claims are **dismissed, without prejudice**, as a sanction for Plaintiff's failure to comply with court orders and failure to prosecute this action in good faith. The Clerk of Court shall enter judgment accordingly and terminate this action.

**IT IS FURTHER ORDERED** that Defendant's motion for preliminary injunction (Doc. 3) is **denied as moot**.

Dated this 11th day of January, 2024.

Dominic W. Lanza
United States District Judge